IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RANDAL DOYLE, § | |
| PLAINTIFF, § | |
| § | |
| VS. § | CIVIL ACTION NO. 4:13-CV-738-BJ |
| § | |
| CAROLYN W. COLVIN, ACTING § | |
| COMMISIONER OF SOCIAL SECURITY, § | |
| DEFENDANT. § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate are as follows:

**FINDINGS AND CONCLUSIONS**

**I.   STATEMENT OF THE CASE**

Plaintiff Randal Doyle ("Doyle") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Doyle protectively applied for SSI on January 5, 2011, alleging his disability began on November 16, 2010. (Transcript ("Tr.") 19, 11-19.) After his application for benefits was denied initially and on reconsideration, Doyle requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 19, 53-58, 66-70.) The ALJ held a hearing August 22, 2012 and issued an unfavorable decision on September 27, 2012. (Tr. 19-27, 32-49.) On May 9, 2013, the Appeals Council denied Doyle's request for review,

leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 3-6.) Doyle subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this

responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

### III. ISSUES

In his brief, Doyle presents the following issues:

A. Whether the ALJ erred in failing to give proper weight to the opinion of Doyle's treating physician;

B. Whether the ALJ erred at Step Two in failing to find Doyle's lumbar impairment severe; and

C. Whether the Appeals Council erred in failing to properly consider the evidence Doyle submitted after the ALJ's decision.

(Plaintiff's Brief ("Pl.'s Br.") at 14-24.)

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

## IV. ADMINISTRATIVE RECORD

In his September 27, 2012 decision, the ALJ found that Doyle had not engaged in any substantial gainful activity since January 5, 2011, the date he filed his application for SSI. (Tr. 21.) At the second step of his analysis, the ALJ found that the medical evidence of record established that Doyle had the following severe impairments: "status-post compression fracture at T5, degenerative disc disease of the thoracic spine, and seizure disorder." (Tr. 21.) At the third step, the ALJ found that Doyle did not suffer from an impairment or combination of impairments that met or equaled the severity of the impairments in the listing. (Tr. 21-22.) As to Doyle's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk about 6 hours in an 8-hour workday, and he can sit for about 6 hours in an 8-hour workday. He must periodically alternate sitting and standing, at will, to relieve pain or discomfort. He can occasionally kneel, crouch, stoop, and climb ramps and stairs. He cannot balance, crawl, or climb ladders, ropes, or scaffolds. He can frequently perform reaching, handling, fingering, and feeling with his bilateral upper extremities. He has no visual or communicative limitations. He cannot work around hazardous moving machinery, excessive vibrations, or unprotected heights. He requires standard seizure precautions.

(Tr. 22 (emphasis omitted).)

Based on his RFC assessment and the testimony of the vocational expert ("VE") at the hearing, the ALJ opined that Doyle was capable of performing his past relevant work as a gauge operator. (Tr. 25-26.) Based on this determination, the ALJ concluded that Doyle was not disabled. (Tr. 27.)

## V.   DISCUSSION

### A. Treating Physician's Opinion

In his brief, Doyle argues that the ALJ erred in failing to give proper weight to the September 2011 medical source statement from Dr. Wright W. Singleton, M.D., P.A. ("Dr. Singleton"), Doyle's treating pain management and disability specialist. (Pl.'s Br. at 14-21.) Doyle claims that the reasons the ALJ gave for rejecting Dr. Singleton's September 2011 medical source statement were not based on substantial evidence. (Pl.'s Br. at 15.)

Specifically, Doyle argues that Dr. Singleton had seen Doyle on a regular basis since 2005 and his exams "consistently found positive trigger points on the left and right musculature, difficulty sitting and standing due to low back pain, positive mid line tenderness, difficulty sitting on the exam table, positive straight leg raises on the right greater than the left, loss of lumbar range of motion indicating some dysmetria to left lateral flexion, decrease right Achilles reflexes, and loss of sensation in the right greater than left lateral lower extremities." (Pl.'s Br. at 15.) Doyle also claims that, while he did attempt to work in 2010, "his subsequent on the job injury would not allow him to return to work and all further references to 'work,' merely reference his minimal assistance to his elderly parents." (Pl.'s Br. at 16.)

Furthermore, Doyle complains about the ALJ's reliance on the opinion of Kevin James, M.D. ("Dr. James), to reject Dr. Singleton's medical source statement, claiming that Dr. James only saw Doyle on two occasions, was "unaware of Doyle's severe lumbar spine impairments, failed to consider any impairments outside of the thoracic spine impairments in his release, and released Doyle back to work without restriction despite MRI evidence of continued swelling within the compression fractures at both T5 and T3." (Pl.'s Br. at 16.) In addition, Doyle argues the ALJ erred in mentioning the opinion of the State Agency Medical Consultant ("SAMC") as a

reason for rejecting Dr. Singleton's medical source statement because the ALJ ultimately gave the SAMC opinion "little evidentiary weight." (*Id.*) Also, Doyle claims that the ALJ erred in relying on Doyle's own testimony as a reason for rejecting the medical source statement of Dr. Singleton because "a review of Doyle's statements and testimony also suggest a less than sedentary RFC." (Pl.'s Br. at 17.)

In addition, Doyle claims that an "examination of the factors [set forth in 20 C.F.R. § 416.927(c)] indicates that the decision erroneously rejected Dr. Singleton's [multiple source statement]." (Pl.'s Br. at 19.) Finally, Doyle argues that the ALJ erred in not giving controlling weight to Dr. Singleton's medical source statement as such statement was consistent with the significant findings of Doyle's previous treating physician, Louis Zegareilli, D.O., consistent and supported by a September 2012 independent medical examination performed by William Mitchell, M.D., and consistent with a 2009 lumbar x-ray and 2013 lumbar MRI. (Pl.'s Br. at 20.)

Controlling weight is assigned to the opinions of a treating physician if such opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 416.927(b), (d)(1). The ALJ may decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special

significance. *See* 20 C.F.R. § 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § [416.927(c)]." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis of 20 C.F.R. § 416.927, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. § 416.927(c); *see* SSR 96-6p, 1996 WL 364180, at *3 (S.S.A. July 2, 1996); SSR 96–2p, 1996 WL 374188, at *4.

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) only if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than the another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is

limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In analyzing Dr. Singleton's medical source statement, the ALJ, after setting forth the law regarding treatment of a treating physician's opinion, stated:

> I note on September 8, 2011, Dr. Singleton completed a functional capacity questionnaire on behalf of the claimant. In that document, Dr. Singleton opined the claimant could only sit for 3 hours in an 8-hour workday and he could only stand/walk 0 to 2 hours in an 8-hour workday. He also significantly limited his ability to lift and carry any amount of weight, and opined the claimant would miss about 3 days of work per month due to his impairments and/or treatment.
>
> I have carefully considered Dr. Singleton's opinion. However, the medical records shows Dr. Singleton had not treated the claimant since June 2009. At that time, although the claimant's back was symptomatic, he told Dr. Singleton that his medications allowed him to return to work, and Dr. Singleton did not note any abnormalities during the examination. The medical record is absent further treatment with Dr. Singleton, with the exception of his opinion completed in September 2011. The gap in treatment from the claimant's last visit with Dr. Singleton and the date the questionnaire was completed raises questions regarding the credibility of Dr. Singleton's limitations. Furthermore, in January 2011, the claimant was evaluated by another physician, Dr. James, who reviewed the claimant's MRI's and conducted a physical examination, at which point he stated the claimant's fractures were healing and released the claimant back to work. Likewise, the State Agency Consultants also found the claimant was capable of a greater functional capacity than Dr. Singleton's opinion. Furthermore, as indicated above, I find that the claimant's own testimony suggests a greater functional capacity that [sic] the severe and restrictive limitations posed by Dr. Singleton. Accordingly, I have given Dr. Singleton's opinion very little weight in determining the claimant's residual functional capacity.

(Tr. 25 (internal citations omitted).)

Based on the foregoing, the Court concludes that, while not all the reasons provided by the ALJ were totally accurate,[2] there is enough evidence referenced by the ALJ and in the record

---

[2] For instance, it does appear that Dr. Singleton had treated Doyle up to 2012. (Tr. 444.) However, this evidence was not in the record that was before the ALJ. Doyle submitted a large amount of evidence to the Appeals Council after the ALJ's decision. The Appeals Council considered the newly submitted evidence but ultimately found no reason to review the ALJ's decision. (Tr. 3-10; see Tr. 280-452) Because there is other evidence to

8

to support his rejection of Dr. Singleton's medical source statement. The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, No. 4:08-CV-503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Specifically, the opinions of Dr. James[3] and Dr. Juan Saitis, M.D. ("Dr. Saitis"), as well as the claimant's own testimony, provide substantial evidence to the ALJ's decision regarding Dr. Singleton's medical source statement. (Tr. 23 (referring to Dr. Saitis' opinion at Exhibit 2F), 25; *see* Tr. 235-38, 259-67.)

As to Doyle's arguments regarding the factors set forth in 20 C.F.R. § 416.927(c), the Court notes that, as discussed above, the ALJ is not required to perform the detailed analysis where there is other reliable medical evidence from a treating or examining physician that controverts the treating specialist's opinion. In this case, the ALJ specifically analyzed and relied on the medical examination by Dr. James, an *examining* physician, in rejecting Dr. Singleton's medical source statement. This is not a case where the ALJ summarily rejected the opinions of the treating physician based solely on the testimony of a non-examining physician. *See Newton*, 209 F.3d at 458. Rather, this is a case where there is first-hand contradictory

---

support the ALJ's decision, any error is harmless. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *72 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

[3] While Doyle argues that Dr. James was unaware of Doyle's severe lumbar spine impairments, it is clear that Dr. James was following Doyle for "back pain." It does not make logical sense that Doyle would not have expressed to Dr. James all areas in his back that he was having pain. In fact, in an examination dated January 20, 2011, Dr. James reviewed the "[l]umbar spine results" of an MRI dated December 28, 2010. (Tr. 265.)

medical evidence from an examining physician. Accordingly, the ALJ was not required to perform a detailed analysis under 20 C.F.R. § 416.927(c) in this case.[4]

## B. Step Two

The next issue is whether the ALJ erred at Step Two in failing to find Doyle's lumbar impairment severe. Specifically, Doyle argues that the ALJ erred by failing to find Doyle's lumbar impairment severe under Step Two . (Pl.'s Br. at 21.) Doyle argues that the ALJ failed to mention "Doyle's severe lumbar impairment, outside of the results from the 2009 x-ray, and fails to designate the impairment as severe or non-severe under *Stone*." (Pl.'s Br. at 21.) Doyle further states:

> As already fully discussed, Doyle's lumbar impairment has clearly constituted his most functionally limiting impairment and was the impairment most fully developed in the record, beginning with the multiple disc ruptures in 2001 and ending with the multiple severe abnormalities revealed in the 2013 MRI. Further, the lumbar impairment was the only impairment Dr. Singletary [sic] was allowed to treat, as this was the only determinable impairment from his 2001 [workers' compensation] claim.

---

[4] Even assuming that the ALJ was required to address the statutory factors listed in 20 C.F.R. § 416.927(c) before rejecting Dr. Singleton's opinions in the medical source statement, the Court concludes that the ALJ, at least implicitly, performed such analysis. To begin with, it is clear that the ALJ knew Dr. Singleton was a treating physician as the ALJ set forth the law regarding analyzing treating physician's opinions prior to discussing Doyle's treatment by Dr. Singleton. Consequently, as to factors one and two under which the ALJ evaluates the examining and treatment relationship between Doyle and Dr. Singleton, the ALJ clearly recognized that Dr. Singleton was Doyle's treating physician and acknowledged that Dr. Singleton had treated Doyle on several occasions. (Tr. 25.) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, after reviewing the other evidence in the record and as set forth above, listed out other evidence in the record that contradicted Dr. Singleton's opinions in the medical source statement. (Tr. 25.) *See* 20 C.F.R. § 416.927(c)(3), (4), (6)c)(3), (4), (6).

As to factor five, more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). In his brief, Doyle, citing to the transcript at page 230, claims that Dr. Singleton is a "pain management specialist and is also a disability specialist, as he is a Fellow of the American Academy of Disability Evaluating Physicians." (Pl.'s Br. at 19.) Assuming without deciding, that Dr. Singleton is a specialist, it is implicitly clear from a reading of the ALJ's decision that the ALJ was aware of Dr. Singleton's status as the ALJ referred to exhibits in the record that contained information regarding such status. (*See, e.g.*, Tr. at 25 (citing Exhibit 8F, page 1 and Exhibit 1F, page 6).) Moreover, even assuming the ALJ erred in not recognizing that Dr. Singleton was a specialist, any such error would be harmless as substantial evidence supports the ALJ's treatment of Dr. Singleton's opinions in the medical source statement.

(Pl.'s Br. at 21.) In addition, Doyle claims that the ALJ erred by failing to consider his lumbar impairment in the RFC assessment. (Pl.'s Br. at 22.) As to this issue, Doyle states:

> The Defendant will likely argue that the decision did consider Doyle's lumbar impairment because there were exertional and postural limitations included in the RFC found in the decision. However, this argument would fail because the decision patently does not mention the lumbar impairment as being severe or non-sever and consequently the limitations found in the RFC assessment can only be based on Doyle's thoracic spine impairment, found severe in the decision.

(Pl.'s Br. at 22 (internal citations omitted).)

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *cf. id.* § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* at 1101 (emphasis added).

In this case, the ALJ, after citing to *Stone*, found that Doyle had the severe impairments of "status-post compression fracture at T5, degenerative disc disease of the thoracic spine, and seizure disorder." (Tr. 21.) While the ALJ did not find Doyle's lumbar impairment to be severe at Step Two, he did state that "an x-ray in November 2009 revealed disc space narrowing at

virtually all levels of lumbar spine, but most severe at L-3-4, L4-5, and L5-S1 where there was some vacuum disc phenomena." (Tr. 23.) Even assuming without deciding that the ALJ should have found that Doyle's lumbar impairment was a severe impairment at Step Two, the ALJ, at Step Four, specifically included limitations to account for Doyle's back issues, as set forth above. (Tr. 22-25.) The ALJ specifically stated :

> While the evidence does not entirely support the claimant's extensive complaints, some limitations could reasonably be expected as a result of his impairments. In reaching this decision, I noted the claimant's subjective complaint at [the] hearing, the objective findings upon examination, and the longitudinal history of treatment for his conditions. However, I do not find that, even when giving the claimant the full benefit of doubt regarding his subjective impairments, these impairments would limit the claimant further. . . .

(Tr. 24.) Consequently, any error the ALJ committed relating to Doyle's lumbar impairment at Step Two was harmless. *See Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) ("But assuming *arguendo* that the ALJ erred by not finding based on [a doctor's] diagnoses that [the claimant's] impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis."); *Gibbons v. Colvin,* No. 3:12-CV-0427-BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding that error under *Stone v. Heckler* potentially causing ALJ not to recognize certain impairments as severe at Step Two was harmless because ALJ considered the impairments in the RFC); *Reliford v. Colvin,* No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis.").

While Doyle argues that the limitations found in the RFC assessment can only be based on Doyle's thoracic spine impairment, the Court notes that the ALJ was obviously aware of Doyle's lumbar spine impairment as the ALJ specifically referred to a November 2009 x-ray

relating to the lumbar spine. In addition, as noted above, the ALJ thoroughly considered the opinion of Dr. Singleton, who, according to Doyle, was only allowed to treat Doyle's lumbar impairment as it was the "only determinable impairment from his 2001 WC claim." (Pl.'s Br. at 21.) Thus, the evidence indicates that the ALJ was aware of Doyle's lumbar impairment and properly accounted for such impairment in the RFC determination.

## C. Evidence Submitted to Appeals Council

Doyle also claims that the Appeals Council erred in failing to properly consider the following evidence Doyle submitted after the ALJ's decision: (1) results of an independent medical evaluation dated September 26, 2012 from William Mitchell, M.D. ("Dr. Mitchell") (Tr. 443-49); (2) a February 25, 2013 supplemental report from Dr. Mitchell (Tr. 450-52) and (3) results of a January 28, 2013 lumbar MRI (Tr. 8). (Pl.'s Br. at 23-24.) Specifically, Doyle states:

> Subsequent to the [ALJ's] decision, Doyle's representative submitted Dr. Mitchell's records and the results of Doyle's January 28, 2013 lumbar MRI to the [Appeals Council]. In the NOTICE OF APPEALS COUNCIL ACTION denying Doyle's request for review, the NOTICE claims that the MRI was considered, but because the MRI was dated subsequent to the decision, the AC found that it was "information about a later time" and therefore did not affect the decision.
>
> . . . .
>
> . . . . As discussed previously, WC had been denying an update of Doyle's lumbar MRI for years, despite his ongoing severe radiating low back pain from his 2001 injury, consistently abnormal physical exams, and requirement for significant pain medications. It was only after Dr. Mitchell's independent medical evaluation, completed a day prior to the decision, found significant ongoing lumbar abnormalities that resulted in a diagnoses of probable continuing ruptured lumbar discs at L4-S1, did WC finally approve the follow on [sic] MRI. In January of 2013, only four months post decision, the MRI was finally approved and revealed numerous significant severe abnormalities, each of which alone could produce the type of limitations found on Dr. Singleton's MSS.
>
> This evidence clearly relates to Doyle's ongoing severe radiating low back pain that began in 2001, and provides significant support for Dr. Singleton's MSS

13

> which was based on the identical lumbar impairment. Consequently, the decision must be remanded for the consideration of this extremely important evidence.

(Pl.'s Br. at 23-24 (internal citations omitted).)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28, 2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82).

The Appeals Council, in its May 9, 2013 Notice of Appeals Council Action, denied Doyle's request for review of the ALJ's decision. (Tr. 3-10.) Specifically, the Appeals Council stated:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.[5]

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of the evidence of record.

We also looked at [a] MRI dated January 28, 2013. The Administrative Law Judge decided your case through September 27, 2012. This new information is about a later time. Therefore, it does not affect the decision about whether you are disabled beginning on or before September 27, 2012.

If you want us to consider whether you are disabled after September 27, 2012, you need to apply again. We are returning the evidence to you to use in your new claim.

(Tr. 3-4 (footnote added).)

Based on the foregoing, the relevant issue before the Court is whether "the new evidence diluted the record to such an extent that the ALJ's determination became insufficiently supported." *Lee*, 2010 WL 3001904, at *8. In this case, the new material referenced by Doyle that he submitted to the Appeals Council shows that, after the first examination and subsequent MRI, Dr. Williams opined that Doyle had multilevel lumbar spondylosis[6] and that his findings were due to "wear and tear of life" and not related to an injury. (Tr. 451.) Such diagnosis is cumulative of other similar diagnosis in the record and referenced by the ALJ. (*See, e.g.*, Tr. 23, 235-39.) Moreover, there is no evidence in the newly submitted evidence referenced by Doyle that such impairment affected Doyle's ability to work beyond what had already been considered by the ALJ. In fact, Dr. Williams, in his February 25, 2013 supplemental report, stated, "In my opinion, no further treatment and evaluation or medical services are indicated, reasonable and

---

[5] The additional evidence included Dr. Mitchell's September 26, 2012 medical evaluation and February 25, 2013 supplemental report. (Tr. 8; *see* Tr. 443-52.)

[6] Spondylosis is defined as ankyloses of a vertebral joint or degenerative spinal changes due to osteoarthritis. Dorland's Illustrated Medical Dictionary 1780 (31st ed. 2007)

15

necessary in relation to the June 12, 2001 [lumbar spine] injury. Findings on the lumbar MRI, in my opinion, are related to wear and tear of life and probably preexisting degenerative changes." (Tr. 451.) Thus, the Court finds that the new evidence does not dilute the record to such an extent that the ALJ's determination became insufficiently supported. Consequently, there was no error and remand is not required.

### RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. See 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 31, 2014**, to serve and file written objections to the United States Magistrate Judge's

proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously transferred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is **TRANSFERRED** to the docket of the United States District Judge.

SIGNED December 17, 2014.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE